

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KDE/KCB
F.#2015R00270

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 14, 2020

<u>By Hand and ECF</u>

Honorable Frederic Block
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   <u>United States v. Mark Kocaj</u>
                <u>Criminal Docket Nos. 19-575, 19-577 (FB)</u>

Dear Judge Block:

      The government respectfully submits this letter in opposition to the motion filed by the defendant Mark Kocaj to modify his bail conditions to permit him to obtain employment without a set schedule or fixed location, over the objection of Pretrial Services and the government. <u>See</u> Def. Ltr., 19-CR-577, ECF Dkt. No. 16.

I.     <u>Background</u>

    A.    <u>Indictment and Detention Hearing</u>

      On December 5, 2019, the defendant was arrested having been charged in two indictments with, among other things, racketeering conspiracy based on his association with the Gambino organized crime family of La Cosa Nostra (the "Gambino family") and extortionate collection of credit offenses. <u>See generally</u> Dec. 5, 2019 Det. Mem., 19-CR-575, ECF Dkt. No. 17.  The government sought the defendant's detention based on the nature of the charged offenses, including racketeering and bribery pertaining to a series of wire fraud schemes executed by, among other things, paying and agreeing to pay bribes and kickbacks to multiple employees of a construction company.  <u>See generally</u> <u>id.</u>  In addition, the defendant made specific threats of violence as part of his extortionate collection of over $30,000 of a gambling debt on behalf of an Albanian organized crime figure from another individual ("John Doe").  <u>See</u> <u>id.</u>  As set forth in more detail in the government's detention letter, in approximately November 2018, and in response to John Doe's request for the defendant's help in collecting a separate gambling debt from an individual (the "Debtor"),

the defendant stated, about the Debtor, "I'll send somebody to grab him by the fucking neck" and "find out where this guy is, I'll send somebody, it's not a problem." Id. at 14; see also id. (statements of the defendant that he would send "a couple of my Albanian guys" and if the Debtor did not pay, he would "catch a fucking beating" because the people the defendant would send "know how to send a message").

Although John Doe did not ultimately take the defendant up on his offer, in May 2019, the defendant helped an Albanian organized crime figure extort Doe. In helping collect this debt, the defendant warned that Doe is "going to get his head split open. . . . These are not the guys to fuck around with. . . . These Albanians, you know what they'll do." Id. The defendant later made clear that Doe is "going to get hurt. I know these guys. . . . They'll do it. And they'll catch him. Whether it's now or later." Thereafter, the defendant repeatedly stated that Doe had to pay the debt or else he would be assaulted. For instance, on May 4, 2019, the defendant stated, "I don't care, if the kid [i.e., Doe] don't want to pay, just tell me, I don't give a fuck. I'll tell them do what they want. I don't give a shit. . . . If he says fuck these guys, . . . will tell my friends to do what they have to do."

On December 6, 2019, over the government's objection, the Honorable Sanket J. Bulsara, United States Magistrate Judge, ordered that the defendant be released pending trial under strict conditions, including home detention, which permitted the defendant to work only as approved by Pretrial Services. See Minute Entry, 19-CR-577, ECF Dkt. No. 8. Magistrate Judge Bulsara found the defendant's statements in November 2018 to be "quite troubling," and, after listening to the recordings, observed that "they put a lot of substance to what's on the paper," i.e., the government's detention memorandum. See Ex. A, Tr. of Dec. 6 Det. Hr'g, at 33. Ultimately, Judge Bulsara released the defendant on a substantial, secured bond, although he observed that doing so was a "close call" in light of the "serious offer of proof by the government."[1] See Ex. A at 35. Judge Bulsara ordered the defendant to remain on home detention with GPS monitoring, leaving only for employment approved by Pretrial Services and to meet with his attorney. Id. at 39.

B.  Requests to Work

On January 13, 2020, defense counsel emailed the government requesting its consent for the defendant to work at a construction company, Integra Consulting of New York, Inc. ("Integra"). Defense counsel attached a letter from Integra, dated January 10, 2020, confirming that it would be able to employ the defendant. Defense counsel represented to the government that Pretrial Services did not consent to the defendant's working at Integra in light of it being a company in the construction industry. On January 16, 2020, the parties appeared before the Court at a status conference, at which time the

---

[1] At the January 16, 2020 status conference before this Court, defense counsel incorrectly stated that Judge Bulsara "tore apart those tapes." See Ex. B., Tr. of Jan. 16, 2020 Status Conf., at 54.

Court denied the defendant's request to work at Integra with leave to revisit the issue in the future.  See Ex. B at 54.

On February 3, 2020, defense counsel emailed the government requesting the government's consent for the defendant to work at an elevator servicing company.  Defense counsel has represented to the government that the job would require the defendant to travel to multiple, different locations on a daily basis, with no fixed schedule and no advance knowledge of the locations where the defendant would need to travel.  Defense counsel requested that the bond be modified such that, rather than remain on home detention, the defendant could travel without restriction between 7 a.m. and 7 p.m. wearing a GPS monitoring bracelet.

The government expressed concern with the arrangement, which would constitute a significant modification of the bond, essentially removing the defendant from home detention to placement on a curfew, and which would allow the defendant to travel freely—meeting with anyone and at any location—without advance notice to Pretrial Services.  Although the defendant argues that his location could be tracked using a GPS monitor, the government understands from Pretrial Services that it would be highly burdensome for Pretrial Services to daily monitor the defendant's whereabouts, which would change multiple times throughout the workday, and confirm those whereabouts against job sites approved by his employer.

Nonetheless, the government sought to balance its concerns with the defendant's request for employment.  Far from requiring an agent to "surveil [the defendant] 24/7," the government indicated to defense counsel that it would consent to the defendant's employment at the elevator servicing company so long as the defendant could provide Pretrial Services with a fixed employment schedule, including locations where the defendant would travel, at least three days in advance.  See Def. Br., ECF Dkt. No. 16.  However, counsel has indicated that such an arrangement is unworkable for the company.  See id.

Accordingly, on February 7, 2020, the defendant made the instant request to modify his bail conditions.  See Def. Ltr.  In the letter, relying upon statements made by the assigned Pretrial Services officer for the Southern District of New York (where the defendant resides), counsel stated that "[p]re trial services have [sic] approved [the defendant's] job interviews thereat and I am unaware of any objections to this request." Id. at 1.  A Pretrial Services officer for the Eastern District of New York has since stated, however, that it objects to the requested modification since the proposed employment offer is not stationary and requires the defendant to travel to various locations.

II.   Analysis

The government respectfully submits that the proposed employment modification, which would significantly modify the conditions of his release by placing the defendant on a curfew rather than home detention, and by allowing him to travel throughout the Bronx and Westchester without meaningful supervision, would undermine the

3

restrictions set by Magistrate Judge Bulsara and pose a signification risk of danger.  As set forth in more detail above and in the government's detention letter, the crimes with which this defendant is charged involve severe and explicit threats of violence in which the defendant was captured on recordings threatening physical harm upon others.  He has close ties to inducted members in the Gambino crime family as well as to Albanian organized crime figures, and he was a key member of perpetrating numerous frauds within the construction industry.  Indeed, the conditions of the defendant's release were carefully crafted following a lengthy detention hearing where Magistrate Judge Bulsara determined that the defendant's release on <u>any</u> bond—even one including home detention—was a "close call."

   Despite these concerns, the government has been willing to accommodate the defendant's request for employment but simply wants to minimize the risk that the defendant has unauthorized meetings or otherwise violates the terms of his release.  The defendant's request – that he be permitted to go anywhere he pleases 12 hours a day – would permit him to meet with anyone at any time, and the government would have no way of determining otherwise.  Although the government could determine where the defendant was via the GPS monitoring, it cannot determine whether or not he met with any member or associate of organized crime, as he is forbidden from doing.

   Moreover, as noted above, the government has spoken with Pretrial Services, which the bond specifies must approve the defendant's employment, and understands that Pretrial Services opposes the modification because it does not offer stationary employment.  Indeed, far from "den[ying] a man with [the defendant's] work experience the right to work," Def. Ltr. at 2, the government does not oppose the defendant's obtaining employment at a job where he can be appropriately monitored by Pretrial Services, and has repeatedly stated so to defense counsel.  The proposed modification, which would significantly alter the conditions of release contemplated by the government, Pretrial Services and the Court, fails to do so.

III. <u>Conclusion</u>

        Accordingly, the government respectfully requests that the Court deny the defendant's application to allow an "employment related curfew" over the objection of Pretrial Services.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:    /s/
        Keith D. Edelman
        Kayla C. Bensing
        Assistant U.S. Attorneys
        (718) 254-6328/6279

cc:    Clerk of Court (by ECF)
       Defense Counsel (by ECF)